## COCA-COLA CO. v. BROWN & ALLEN.

### (District Court, N. D. Georgia. July 22, 1921.)

**1. Courts ☞328(3)—Value of good will; element of value involved for jurisdictional purposes.**

In a suit to enjoin an alleged unfair trade practice affecting the value of complainant's good will, such value may be considered in determining the amount involved for jurisdictional purposes.

**2. Trade-marks and trade-names and unfair competition ☞68—Unfair trade practice may be enjoined.**

Complainant, which makes and sells a well-known syrup for soda fountains, to be diluted with carbonated water and sold to the public as a drink, *held* entitled to an injunction to restrain defendants, who operate a soda fountain from diluting complainant's syrup and adding other ingredients before placing it in their fountain, and drawing and selling the mixture as complainant's drink.

In Equity. Suit by the Coca-Cola Company against Brown & Allen. On motion for preliminary injunction. Granted.

Candler, Thomson & Hirsch, of Atlanta, Ga., for complainant.
Brewster, Howell & Heyman, of Atlanta, Ga., for defendant.

SIBLEY, District Judge. The Coca-Cola Company is the manufacturer of a syrup known as Coca-Cola, which it sells to soda founts to be diluted with carbonated water and sold as a drink to the public. To create a public demand it spends annually much money in advertising, and has a large and well-established patronage for its drink so sold. Brown & Allen, operating a soda fount, purchase Coca-Cola from the Coca-Cola Company and dispense it. An injunction pendente lite is now sought against an alleged unfair practice of Brown & Allen.

[1] 1. Jurisdiction is contested because an insufficient amount is said to be involved. It may be that the damages recoverable from Brown & Allen are less than $3,000, or even that none are recoverable because incapable of estimation; but the wrong alleged affects the value of petitioner's good will in business, which may be greatly injured by a continuance of the practice attacked. The value of this good will, which greatly exceeds $3,000, may be looked to in determining the amount involved, and the jurisdiction is thereby sustained. Frontera Transp. Co. v. Abaunza (C. C. A.) 271 Fed. 199.

[2] 2. The evidence authorizes a finding that, while filling glasses for Coca-Cola, the defendants at their fount, in the presence of the customer, draw into the glass an amount of syrup resembling in consistency and color petitioner's product, and then add the usual amount of carbonated water and such flavors as the customer may order. The

---

syrup so drawn is Coca-Cola, to which water, sugar, and caramel have been added before putting it in the fount. The water, of course, increases the amount of syrup and weakens it. The sugar, however, serves to restore its consistency and the caramel its color; they being used for this purpose in making the original syrup. Analyses indicate that the adulteration results in making about two gallons out of one. Thus, if the usual amount of syrup is drawn for a customer, his drink really contains but one-half the peculiar constituents of Coca-Cola, and is somewhat altered, perhaps, in taste.

It is contended that this is not only a fraud upon the public, but reflects itself also as one upon the petitioner, because the customer, in the language of the street, will conclude that "Coca-Cola is no good any more," and its popularity will be destroyed. On the other hand, it is said that the syrup was sold to be diluted, and the time and manner of its dilution is immaterial, and that by treating it as they do defendants please their customers and act within their rights.

No statute is involved. No contract restricting the manner of use or sale of the syrup is shown. No mark, of course, is upon the wares sold at the fount, and petitioner's trade-mark is, therefore, not involved. It is not an ordinary case of unfair competition, where one substitutes a spurious and imitative article and sells it as another's product. Indeed, it is said there can be no competition between a wholesaler and a retailer (Regent Shoe Mfg. Co. v. Haaker, 75 Neb. 426, 106 N. W. 595, 4 L. R. A. [N. S.] 477), and in point of fact the defendants are using and selling the petitioner's very product. But the genuine article has been altered by dilution and by disturbance of the proportions of its ingredients, and so sold. Counsel have found no authority respecting the right of a purchaser in bulk from the wholesaler to dilute or adulterate the article purchased and sell it as the product of the maker.

Without doubt the retailer here, because of the nature of the business and the way in which the syrup is ordinarily used therein, may dilute Coca-Cola syrup in offering it for sale. It is never drunk otherwise than diluted. He may also sweeten it by adding sugar, if that is desired by his customer, or he may similarly add anything else the customer desires. He may even develop a peculiar and popular mixture, which may make his Coca-Colas known and sought as such. But can he, with no claim made to the public of a distinctive mixture, and relying solely on the reputation of Coca-Cola as developed by its maker, deceptively dilute and cheapen it for the additional profit to be thus made? Such conduct is immediately a fraud on the purchasing public. It is also a fraud of which the maker may complain, because it tends to disrupt that connection between him and the purchasing public, built up at large expense and through a long time, which the law recognizes and protects as a good will, indirect and intangible though the connection be.

There seems to be nothing in the way of defendants selling weak Coca-Colas, or sweet ones, if they will; but it ought to be openly done. The syrup drawn in the customer's presence on his call for Coca-Cola

ought to be the unadulterated article. That it is such is the fair intendment of the transaction. The customer understands the syrup drawn to be what he calls for. What is afterwards added by way of dilution or spiking he sees, and is not deceived by it. If defendants should put one-half quantity in the glass, instead of half strength, in serving Coca-Cola, it would be at once seen. The conclusion is inescapable that the dilution was made before the syrup was drawn, and concealed as to consistency and color by sugar and caramel, in order to deceive the purchaser as to its strength, and not in order to make weak or sweet Coca-Colas. Against the continuance of this practice petitioner is entitled to protection. If it is not done to deceive, defendants can have no objection to stopping it.

An injunction pendente lite will be ordered against drawing from the fount for mixture and sale as Coca-Cola on calls therefor any other than the unaltered and unadulterated syrup made by petitioner and known as Coca-Cola.